■ KENNETH CASTINE, as Administrator of the Estate of WILLIAM CASTINE, Deceased, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 41072.) — GIBSON, P. J. Appeal from a judgment of the Court of Claims awarding damages arising out of the appropriation of lands for highway purposes, the only issue being as to the amount of the consequential damages included in the award. The property was a large dairy farm, well-laid out and improved with modern, adequately equipped buildings. It was well and profitably managed. As to these facts the opposing experts were in near-agreement as they were, too, with respect to before value, claimant's expert finding $139,700 and the State's expert testifying to $136,200; as against which the court found $137,000. The court's finding of $5,500 for direct damage, which claimant has not appealed, was less than claimant's figure of $5,985 and the State's computation of $5,725. The State's expert allowed but $750 for consequential damage, claimant's expert testified to $19,992 and the court awarded $15,000, which the State attacks as " unsupported by scientific methods of evaluation "; this being the sole issue defined and the sole point urged in the Attorney-General's brief. We find, however, that the award was well within the range of the competent, adequately supported and well-considered expert testimony. Impressive as claimant's expert's qualifications were, the acceptance of his testimony depends more importantly on the reasonable and logical bases underlying his conclu-

sions, which we find sufficient and convincing. The appropriation took from the 470-acre farm some 71 acres in fee and left some 13 acres landlocked. Claimant's expert computed the dairy farm operation in terms of the 214 animal units which it was capable of supporting prior to the appropriation; determined that by reason of the taking this capacity would be reduced by 35 units; and noted other specific items of damage. He found that the taking had caused a 15% reduction in productive capacity, with like reduction in market value of the property. The loss in productive capacity could be overcome, he said, either by purchase of additional lands for the production of fodder or by changes in management techniques, these including the erection of additional silos, undertaking dry-lot feeding, purchasing hay, and pursuing other methods; all requiring large capital outlays as well as other substantial, recurring expenditures. The subsequent conduct of the operation was such as, first, to verify and support the expert's conclusions and, second, to afford a complete and pragmatic answer to the State's argument predicated on proof that after the appropriation the farm carried the same number of animals as before; for in changing management techniques to compensate for the lost areas, two additional silos were erected, water installations to replace a spring were constructed and, in addition to these capital expenditures, expense of from $4,000 to $6,000 for the purchase of hay was incurred in each year subsequent to the taking. The award for consequential damages was warranted by proof of the factors which have been alluded to and without reference to those other and relatively minor elements which appellant suggests may have been given consideration. Judgment affirmed, with costs. Herlihy, Reynolds, Staley, Jr., and Brink, JJ., concur with Gibson, P. J.